**Opinion issued September 22, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00578-CV

_____

## JIM P. BENGE, M.D., AND KELSEY-SEYBOLD MEDICAL GROUP, PLLC, Appellants
## V.
## LAUREN WILLIAMS, Appellee

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-52657**

---

### OPINION DISSENTING FROM DENIAL OF EN BANC RECONSIDERATION

I respectfully dissent from the Court's denial of en banc reconsideration. The majority opinion, in my view, is based on misreadings of two seminal Texas Supreme Court cases, *Felton v. Lovett* and *Crown Life Insurance Co. v. Casteel*, with grave consequences for Texas law.

First, the majority reconstitutes the plaintiff Williams' case and, in my view, misconstrues the Texas Supreme Court's holding in *Felton v. Lovett* as to the scope of Texas's informed consent statute, Civil Practice and Remedies Code section 74.101, and erroneously claims that Williams covertly tried an unpled and invalid cause of action under that statute disguised as a malpractice claim. Second, it misconstrues the Texas Supreme Court's opinion in *Crown Life Insurance Co. v. Casteel* as requiring it to reverse this case and remand for a new trial because it concludes the jury might have awarded unspecified damages on that unpled, invalid claim as to which no error was specifically alleged or preserved, instead of awarding damages on the malpractice claim Williams actually did plead and submit to the jury on a broad-form question as to liability for professional negligence.

In restating Williams' case, the majority claims that when Williams pled that Dr. Benge committed professional malpractice by, inter alia, secretly using an unqualified resident physician to perform fifty percent of her laparoscopic-assisted vaginal hysterectomy surgery ("LAVH"), she was actually pleading that Dr. Benge violated the informed consent statute by failing to obtain her consent to his use of a resident. The majority holds that Williams' unpled informed consent claim was invalid because a claim that Dr. Benge failed to obtain Williams' consent to the use of a resident does not concern a risk inherent in an LAVH surgery for which

2

section 74.101 requires consent. It then finds that the jury improperly considered this unpled and invalid claim and awarded unspecified damages on it, so it is required to reverse and remand this case.

The majority's restatement of the case, in my view, distorts Williams' actual pleadings, the nature of the trial, and the law regarding the informed consent statute, malpractice, and jury charge error. Williams made no claim that she suffered damages because Dr. Benge failed to inform her that he was using a resident to assist him, and she made no claim for any damages traceable to any such claim. Williams plainly pled that Dr. Benge secretly used an unqualified resident physician, who had never performed an LAVH, as a co-surgeon to perform half of her surgery; that this was an act of malpractice that violated the canons of professional ethics and the professional standard of care of a surgeon; and that this concealed use of an unqualified co-surgeon directly caused her injuries when that unqualified co-surgeon perforated her bowel, causing her life-threatening and life-altering injuries. Williams' and Dr. Benge's expert witnesses both testified that the use of a secret unqualified co-surgeon to perform half of an LAVH violates the professional standard of care of a reasonable and prudent physician. There was no testimony that Dr. Benge failed to disclose his use of a resident; that Williams was entitled to such a disclosure under the informed consent statute; or that Dr. Benge's failure to obtain her consent to the use of a

3

resident violated his statutory duty of disclosure and caused her damages. Nor was any such theory of recovery pled either by Williams affirmatively or by Dr. Benge defensively.

In making its argument for reconstructing the case, the majority, in my judgment, misconstrues the holding in *Felton v. Lovett*, in which the Texas Supreme Court construed the informed consent statute, Civil Practice and Remedies Code section 74.101, and stretches the scope of the statute beyond all recognition. What *Felton* actually says—directly contrary to what the majority holds—is that a physician has a statutory duty to disclose to his patient "*risks inherent in treatment*" that "*occur without negligence*," but that there is no duty to disclose malpractice under the statute. *See* 388 S.W.3d 656, 661–62 (Tex. 2012) (emphasis added) (stating that section 74.101 "requires[s] disclosure of risks 'inherent' in treatment," i.e., risks that "exist[] in and [are] inseparable from the procedure itself . . . . even if treatment is proper and properly administered. . . . Inherent risks of treatment are those which are directly related to the treatment and occur without negligence."). *Felton* also expressly states, "Malpractice . . . is [a] risk . . . that inheres in the *practice* of health care, not in the care itself. Thus, *the inherent risks of surgery do not include the possibility that it may be . . . negligently performed*." *Id.* at 662 (emphasis in original and added). Because the only claim Williams made was for malpractice, the plain language of

4

*Felton* takes her claim outside the scope of claims made under the informed consent statute.

In a proper informed consent case, the plaintiff seeks damages for injuries inherent in a properly performed procedure which he claims he would not have consented to had the physician disclosed to him those inherent risks. *See Hood v. Phillips*, 554 S.W.2d 160, 166–67 (Tex. 1977) (holding submission of issue of informed consent to jury was proper where patient claimed physician failed to warn him of risks of numbness, heart attack or stroke, and lack of success inherent in medically unaccepted treatment for emphysema from which patient suffered injury and where defendant physician testified he did disclose those risks). However, the risk that an unqualified co-surgeon will pierce a patient's bowel is *not* a *risk inherent in a properly performed LAVH* and thus subject to statutory disclosure. It is, instead, a *foreseeable risk of a negligently performed procedure*—the very cause of action Williams pled and tried. *See id.* at 165 (burden of proof on a patient-plaintiff in a medical malpractice suit is "to establish that the physician-defendant has undertaken a mode or form of treatment which a reasonable and prudent member of the medical profession would not have undertaken under the same or similar circumstances").

Dr. Benge's failure to disclose his intent to use a person who had never done this laser-assisted surgery before to perform half of the LAVH concealed from

Williams his breach of the standard of care of a reasonable and prudent LAVH surgeon. Dr. Benge's breach in using an unqualified resident as a co-surgeon foreseeably resulted in the perforation of Williams's bowel. That is not a mere failure to disclose the use of an assistant as a risk of a properly performed LAVH. That is evidence of breach of the standard of care of a reasonable and prudent physician by the use of a secret unqualified co-surgeon, as both experts testified. Thus, this is not an inherent risk of surgery to which the statutory duty to disclose could apply. *See Felton*, 388 S.W.3d at 661–62 (defining "risks inherent in treatment"). Section 74.101 has no relevance to this case. The invalid theory of liability found by the majority to have been improperly submitted to the jury in the broad-form negligence question is simply not there.

The majority compounds its error when it opines that the Texas Supreme Court's opinion in *Crown Life Insurance Co. v. Casteel* not only allows but requires it to remand this case to the trial court for retrial with the inclusion of an instruction that the jury must not consider as evidence of malpractice any evidence that Dr. Benge concealed from Williams his use of an unqualified co-surgeon during the LAVH. The majority's justification for this holding is that this evidentiary instruction averts the danger that the jury *might* have awarded *unspecified* damages on the *unpled* and invalid theory of an alleged breach of the statutory duty to disclose the use of an assistant. But the invalid theory is entirely

6

of the majority's own making, and the evidence it orders the trial court to instruct the jury not to consider is material evidence of malpractice, or medical negligence. The case was, in fact, properly submitted to the jury on a broad-form liability question as to medical negligence—the *only* theory pled and tried by Williams.

*Casteel* holds just the opposite from the majority—namely, that the trial court's submission of a case to the jury on a single broad-form liability question is harmful error requiring reversal when it permits the jury to find an unspecified improper element of damages on an invalid theory that was actually *pled along with a valid theory* and submitted to the jury—not on an invalid and non-existent theory of liability that was *not* pled. *See* 22 S.W.3d 378, 387–88 (Tex. 2000). Here, nothing was pled but Williams' malpractice claim—a valid theory of recovery of damages for her injuries. And all of the damages Williams sought and the jury awarded—$240,000 in damages for past and future pain and mental anguish, $302,609 for past and future lost earning capacity, $20,000 for past and future physical impairment, and $1,332,960.14 for past and future medical expenses—were properly recoverable for the injuries Williams suffered as a direct result of Dr. Benge's medical negligence. None of these damages is a type of damages that cannot be recovered for malpractice or might have been recovered on some other theory that was pled and tried, because there was no such theory.

No damages were sought and submitted to or awarded by the jury that might reasonably be mistaken as resulting from anything other than the injuries Williams directly received from Dr. Benge's acts of malpractice. No damages were sought or were attributable to a claim that Dr. Benge caused Williams' injuries by failing to obtain her consent to risks inherent in a properly performed LAVH procedure. Thus, as it misconstrues and expands *Felton* and section 74.101, so the majority opinion also misconstrues and expands *Casteel* into the realm of unlimited speculation as to what a jury *might* have told itself about an unpled and inapplicable cause of action about which it was asked no question and given no instruction.

The damage done by the majority's reading of *Casteel* extends far beyond this case to the courts' application of *Casteel* in reversing cases submitted to the jury on broad-form liability questions long mandated by the Texas Supreme Court and by the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 277 (mandating broad-form submission "whenever feasible"); *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990) ("Rule 277 mandates broad form submission 'whenever feasible,' that is, in any or every instance in which it is capable of being accomplished."). On the majority's reasoning, broad-form submission is never feasible when an appellate court can conceive of an invalid theory of recovery that

might have been pled but was not and that, if pled, might have permitted the jury to find an improper unspecified element of damages.

I cannot agree with the majority's construction of either *Felton* or *Casteel*. I believe the majority's reading of *Felton* does great damage to the law by nullifying a very serious breach of the canons of ethics and standard of care of a reasonable and prudent physician as an act of malpractice for which damages may be recovered. I am also concerned that the majority's reading of *Casteel* allows an appellate court to overturn a jury verdict on damages entered in response to a broad-form theory of liability for medical negligence because the trial court did *not* submit to the jury a question or instruction on an invalid theory of liability that was *not pled* as a claim for damages by the plaintiff *or* as a defensive issue by the defendant, and as to which *no* damages were sought—but which the appellate court speculates nevertheless *might* have somehow been wrongly considered by the jury and *might* have led it wrongly to find invalid damages of an unspecified sort.

This highly speculative reading of applicable law stretches the scope of the informed consent statute beyond all recognition, distorts the well-established law of liability for both breach of the duty to disclose and medical negligence, and makes the entire law relating to the submission of broad-form jury questions unworkable, as the appellate court is allowed to speculate however it likes as to what the jury might have thought about unpled, unsubmitted, invalid causes of

action and the unspecified damages that have been awarded on those unpled causes of action, while it ignores the causes of action and defenses actually pled and the damages actually sought and awarded. The majority opinion sends the case back to be retried with an *evidentiary* instruction that the jury must not consider admissible material evidence of malpractice in assessing damages. The opinion can, therefore, only create confusion in the trial court on remand and in any subsequent trial court faced with any of the same issues.

In my view, the extraordinary circumstances of this case warrant en banc reconsideration. *See* TEX. R. APP. P. 41.2(c) (stating that en banc consideration is "not favored" and should only be ordered if "necessary to secure or maintain uniformity of the court's decisions" or "extraordinary circumstances require en banc consideration"). I therefore respectfully dissent from the denial of en banc reconsideration.

Evelyn V. Keyes
Justice

Panel consisted of Justices Keyes, Bland, and Brown.

En banc reconsideration was requested. *See* TEX. R. APP. P. 49.7.

A majority of the justices of the Court voted to overrule the motion for en banc reconsideration.

10

The en banc court consists of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Massengale, Brown, Huddle, and Lloyd.

Justice Brown, writing a supplemental opinion on motion for en banc reconsideration, joined by Justice Bland.

Justice Jennings, dissenting to the denial of en banc reconsideration with a separate opinion, joined by Justices Keyes and Higley.

Justice Keyes, dissenting to the denial of en banc reconsideration with a separate opinion.

Justice Lloyd, dissenting to the denial of en banc reconsideration with a separate opinion, joined by Justices Keyes and Higley.